## GREEN v. RASCH.*

### No. 16577.

Court of Appeal of Louisiana. Orleans.
March 8, 1937.

Lemle, Moreno & Lemle, of New Orleans, for appellant.

Johnston Armstrong, of New Orleans, for appellee.

JANVIER, Judge.

Isiah Green, a tenant of Mrs. Philip J. Rasch, alleges that he was severely injured while lying in bed when a piece of plaster fell "from the wall and ceiling" and struck him "on the back of his head and his spine." Defendant, admitting that a piece of plaster did fall from the wall, maintains that it did not fall upon plaintiff and that, if he received any injuries at all, they were so slight as to be of no importance whatever.

In the court a qua there was judgment in favor of plaintiff for $100 of which $70 was awarded him as compensation for his injuries and suffering and $30 for the amount charged by his physician. Defendant has appealed and plaintiff has answered the appeal contending that the amount awarded is insufficient and asking that it be increased to the sum originally prayed for.

Defendant relies entirely on inconsistencies and contradictions in the evidence produced on behalf of plaintiff.

In the first place, plaintiff contends that he was lying on his back and yet he alleges that the injuries he sustained were, as we have said, "on the back of his head and his spine." His own physician states

*Rehearing denied March 22, 1937.

that his injuries were very serious, saying that plaintiff had "some scars about his forehead, up over the eye and below the hair line on the forehead," and that he found it necessary to put iodine on the scars which plaintiff sustained on the front of his head. But, in spite of this fact, a reputable physician who called upon plaintiff at the request of defendant immediately after the occurrence of the accident and, in fact, within two hours of the time at which the plaster fell, states that there was no evidence whatever of any bruises or abrasions of any kind and that he could not find the slightest evidence of injury. He also testifies that plaintiff's pulse and his blood-pressure were both normal and this in spite of the fact that plaintiff's physician stated that when he visited him, which was only an hour or so earlier, both were extremely high. Plaintiff's doctor testified that "his eye pupils were unequal, the one on the left side was widely dilated and the right was contracted." He later admitted that this eye condition had nothing whatever to do with the accident and that plaintiff's eyes were always in the condition to which he testified.

Plaintiff, his doctor, and his wife, are in substantial disagreement as to the extent of the period of disability. One of them states that he was confined to his bed for ten days; another states that the period of confinement to bed was two weeks, and the wife fixes the period in one instance at six weeks and at another time in her testimony at one month. The physical facts show that since the plaster which fell came from the side wall, it would probably not have pitched any great distance out into the room and yet it appears that when defendant's representative called, which was within about an hour after the happening of the accident, the plaster was "all over the bed."

There is another contradiction which, in itself, is of no great importance, but which, when considered in connection with the other suspicious circumstances, lends color to defendant's theory. It is that although the plaintiff's doctor testifies that he was summoned by telephone, plaintiff's wife states that she called personally at the doctor's residence to summon him.

The doctor also testifies that though he made a charge of $30 for his treatment, he had "forgotten" to bring his memorandum book showing the number of visits

and also showing of what the various treatments consisted.

If plaintiff was injured as seriously as he says he was and was confined to his home for a period of several weeks, as he and his witnesses testify, the amount awarded by our brother below, $70, was obviously insufficient.

Another circumstance which may be pointed to as most suspicious is the fact that, within a very few minutes after the falling of the plaster, plaintiff called upon his lessor, apparently as the first step in the preparation of a claim for damages. If plaintiff was actually injured seriously, as he claims, it is almost inconceivable. that within so short a time he would have taken the matter up with his lessor.

Plaintiff's wife testified, concerning the location of the injuries alleged to have been sustained, that he "had a little scar on his forehead" and "a 'knot' like up on the top" of his head. Neither physician found any such "knot."

The testimony of plaintiff and his witnesses is so unconvincing, so contradictory, and so obviously exaggerated that we have no difficulty whatever in reaching the conclusion that, though the plaster did fall, plaintiff sustained no injury as the result thereof. We, therefore, find it necessary to reverse the judgment of the court below.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and it is now ordered that plaintiff's suit be dismissed at his cost.

Reversed.